In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00139-CR
_____

**MICHAEL EZRA HOOKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 356th District Court**
**Hardin County, Texas**
**Trial Cause No. 25,276**

_____

**MEMORANDUM OPINION**

To resolve the issues in this appeal, we must decide whether the trial court erred by trying Michael Ezra Hooks in absentia.[1] In three issues, Hooks argues that because the record does not show that he entered a plea to the indictment, by trying him in absentia the trial court

_____

[1]Tex. Penal Code Ann. § 46.04 (Unlawful Possession of Firearm).

1

violated his state and federal constitutional rights under the Confrontation Clause, his right to Due Process, and his right to be present for his trial under article 33.03 of the Texas Code of Criminal Procedure.[2] We address Hooks' issues together because Hooks did not separate the arguments that he relied on but instead briefed his issues together.

Under Texas Rule of Appellate Procedure 44.2, we must assume that Hooks entered a plea of not guilty to the indictment since the record doesn't affirmatively show otherwise. Because the appellate record supports the trial court's conclusion that Hooks' decision not to attend his trial was voluntary, we conclude that Hooks hasn't shown his constitutional or statutory rights were violated. For the reasons explained below, we overrule his issues and affirm the trial court's judgment.

---

[2]U.S. CONST. amends. V, VI, XIV; Tex. Const. art. 1, § 10; Tex. Code Crim. Proc. Ann. art. 33.03.

Background

In March 2019, a grand jury charged Hooks with violating the felon-in-possession statute.[3] In September 2020, the State notified Hooks that if convicted, it would seek to enhance his punishment to the punishment range available for punishing repeat and habitual felony offenders.[4] The notice the State filed alleges that Hooks had incurred five felony convictions before he was charged with unlawfully possessing a weapon. The notice states that Hooks has prior convictions for (1) burglarizing a habitation, (2) theft, (3) aggravated assault with a deadly weapon, (4) assault on a public servant, and (5) indecency with a child.

On Monday, March 14, 2022, the trial court called the case to trial. The reporter's record reflects the trial court had a jury panel available that day, but the jury was not in the courtroom. Outside the jury's presence, the trial court asked Hooks whether he wanted a bench trial or

---

[3]Tex. Penal Code Ann. § 46.04 (prohibiting a felon from possessing a firearm in any location other than his home after incurring a conviction for a felony and prohibiting a felon from possessing a firearm in their home for five years from the person's release from confinement, community supervision, or parole).

[4]*See id.* § 12.42 (Penalties for Repeat and Habitual Felony Offenders on Trial for a First-, Second-, or Third-Degree Felony).

whether he wanted "to go to trial to a jury?" Hooks said: "I'd rather do a bench trial." When the trial court asked Hooks whether he was sure, Hooks answered: "Yes, sir." The judge set the case for a bench trial and advised the parties that the trial would begin on Wednesday, March 16, 2022. The judge also ordered the parties to be in court by 8:45 a.m. Hooks told the trial court that he would be there at "7:00 o'clock."

On Wednesday, March 16, 2022, the first thing the trial court did after opening court was conduct a docket call, which included Hooks' case. The reporter's record shows that Hooks' attorney and the attorney for the State were present for the docket call. After the trial court called the docket, the trial court noted:

> It is now -- call it 9:08 -- at least, 9:08. Michael Hooks is not in the courtroom. Call his name, please, at the door three times. And he was ordered to be here.

When the bailiff told the trial court there was no response, the trial court asked Hooks' attorney whether he had anything to say. Hooks' attorney told the trial court that he was "expecting [Hooks] to be here any moment[,]" but that he "hadn't had any contact with him since Monday." The judge then asked the bailiff to look for Hooks in the courthouse.

4

When the bailiff returned to the courtroom, he told the trial court that Hooks had "not even [been] seen coming across the parking lot or anything." The trial court noted that it didn't wish to proceed without Hooks, but on Monday the court had gotten the impression "that [Hooks] didn't want a trial in any shape, form, or fashion. And my feeling is [Hooks] has voluntarily absented himself from this court. And [Hooks' attorney] said he hadn't talked to him since then."

The trial court also asked Hooks' attorney whether he had "anything" to say. The attorney said that Hooks told him "on Monday that he was feeling a little sick. So I don't know if he got sick or – if that's an excuse."

The trial court also asked Hooks' attorney whether he had Hooks' phone number. The attorney told the judge that he had "a number for his sister[,]" as he "believe[d] [Hooks] was staying there." The trial court called a recess to allow Hooks' attorney to call the number he had for Hooks, but the judge warned that after the recess, "we're going to start." Around 9:45 that morning, the reporter's record shows that Hooks' attorney told the trial court that although he had telephoned Hooks' sister, no one answered.

The judge asked the bailiff to check again to see if Hooks was in the hall or "anywhere on the premises." When the bailiff came back, the bailiff advised the trial court that he had checked in the parking lot and the areas downstairs from the courtroom in the courthouse, but that Hooks was not there.

At 9:51, the trial court instructed the State to call its first witness. But before the State did so, Hooks' attorney moved for a continuance in an oral, unsworn motion. According to the attorney, he had filed a subpoena with the sheriff's department and asked that the subpoena be served on a witness who had not yet been served. The motion for continuance was denied, but the trial court told the attorney the court would reconsider the motion after hearing the testimony of the State's witnesses. The trial court explained that after hearing the testimony, the court might "consider taking a recess so one of our deputies can go find [the person on whom the attorney wanted the subpoena served]."

After the trial court denied the motion for continuance, Hooks' attorney lodged one more objection: "I would object to having the Court go forward with this trial without the Defendant being present in the courtroom." The trial court overruled that objection, stating:

6

The Court doesn't want to proceed without him, but he knew to be here. And I've already stated on the record the Court's observations. And I believe he has voluntarily chosen not to be here. Now if I find out that some horrible – something has befallen him, well, then we'll go from there. And I think that's unlikely.

The State then called its first witness. At 11:25 that morning and before the parties began questioning the third witness who testified in the case, the trial court asked Hooks' attorney if he had heard from Hooks. In response, the attorney said: "No, your Honor."

After the parties completed questioning the State's fourth witness, the State rested. Hooks' attorney announced that he was calling the witness that he made the subject of his motion for continuance based on his unserved subpoena, but the witness did not answer the bailiff's call. After that, Hooks' attorney made a proffer about what the witness that he wanted to call would have said had the witness testified, and then he rested.

After a recess for lunch, at 1:00 o'clock that afternoon the trial court asked Hooks' attorney whether he'd heard from Hooks or his sister. Hooks' attorney said he'd gotten no "phone messages from Mr. Hooks or his sister." The attorneys for the parties presented closing argument, the

7

trial court found Hooks guilty, revoked his bond, and told the attorneys the sentencing hearing in Hooks' case would occur at 9:00 a.m. on April 14th.

On April 14th, Hooks and his attorney appeared for the hearing regarding Hooks' sentence. Hooks' attorney objected to proceeding with the sentencing hearing, and he argued "we didn't have a proper trial since [Hooks] wasn't [t]here. So I object to you sentencing him [in Trial Court Cause Number 25276] today because I don't think that that case was valid." The trial court overruled the objection, and found that Hooks had "voluntarily absented" himself from trial, explaining:

> [W]hen you asked me to go to a bench trial and you and your lawyer both showed up here and you signed your waiver, I had 60 people literally sitting behind you waiting. So you made that decision – y'all made that decision to proceed on Wednesday – to continue a trial until Wednesday. Then you didn't show up. So – and then now you're going to complain that something was wrong about that? Well I respectfully disagree.
>
> I find you voluntarily absented yourself. You did not show up because you didn't want to go Monday, and apparently you didn't want to go Wednesday. So here we are. So you asked all along, you and your lawyer: I want a jury trial, a jury trial. Then I finally get one here, and [n]ow we don't want that; we want a bench trial. So are you ready to start the sentencing?

8

Then, Hooks' attorney noted that although a presentence investigation report had been prepared, the probation officer had not interviewed Hooks in preparing the report because according to Hooks' attorney, the probation officer "didn't know how to get a hold of him at the time." The trial court decided to reset the sentencing hearing to allow the probation department to update its report.

On April 25, 2022, the trial court conducted the sentencing hearing. Hooks was present for the hearing. During the hearing and relying on the objection that he had raised at Hooks' trial, Hooks' attorney objected to the proceeding with the sentencing hearing stating that because Hooks had not attended his trial, Hooks was "not properly before the Court for sentencing." The trial court overruled the objection. Hooks subsequently pleaded "True" to committing four of the five felonies listed in the notice the State filed identifying the felonies the State intended to use to prove that Hooks was subject to being punished as a repeat and habitual felony offender under section 12.42 of the Penal Code.[5] In the hearings on April

---

[5]*Id.* During the hearing, the State abandoned the fifth count in the notice the State filed regarding its intent to prove that Hooks had prior felony convictions. The fifth count is the count alleging that in October

14th and April 25th, Hooks never presented any evidence to explain why he didn't attend the guilt-innocence phase of his trial.

After considering the arguments the attorneys presented to the court in the hearing and its finding that Hooks unlawfully possessed the firearm, as alleged in the indictment, the trial court sentenced Hooks to prison for fifty years.

## Standard of Review

"It is well settled in this state that a plea must be entered in every criminal case and if no plea is entered, the trial is a nullity, since there is no issue for the jury or the court."[6] That said, under the rules of appellate procedure, unless it was "disputed in the trial court, or unless the record affirmatively shows the contrary, on appeal the court of appeals must presume" [ ] "that the defendant was arraigned" and "that the defendant pleaded to the indictment or other charging instrument[.]"[7]

---

2013, Hooks was convicted of the offense of indecency with a child in a case in Hardin County.

[6]*Lumsden v. State*, 384 S.W.2d 143, 144 (Tex. Crim. App. 1964).
[7]Tex. R. App. P. 44.2(c)(4).

10

Analysis

Each of Hooks' issues relies on his theory that the trial court convicted him without a plea. To begin, we agree with Hooks that the appellate record doesn't show that Hooks entered a plea. That said, the record also doesn't show he did not enter a plea or show that a plea of not guilty was not entered on his behalf. Additionally, the judgment reflects Hooks entered a plea, and as mentioned, Rule 44.2(c)(4) requires appellate courts to assume that the defendant entered a plea unless the record affirmatively shows otherwise.

We also note that the appellate record doesn't include a record from Hooks' arraignment. "An arraignment takes place for the purpose of fixing [the defendant's] identity and hearing his plea."[8] We recognize that defendants may waive their right to arraignment, but in Hooks' case, the appellate record doesn't include a signed waiver.[9] Thus, on the silent

---

[8]Tex. Code Crim. Proc. Ann. art. 26.02.
[9]*Id.* art. 26.011 (authorizing the defendant's attorney to "present a waiver of arraignment" to the clerk).

record we have here, we must presume that Hooks either entered a plea or that the trial court entered a plea of not guilty for him.[10]

On appeal, Hooks hasn't argued the evidence doesn't support the trial court's conclusion that Hooks' absence was voluntary. Even had he made that argument, Hooks probably could not have shown that his absence was involuntary on a record that reveals he knew his case was going to trial, and he failed to communicate with the court or his attorney on the day of the trial to explain why he wasn't there. Moreover, after the trial, Hooks never offered an excuse to indicate that his absence was anything other than voluntary. So even when we liberally construe Hooks' brief and assume his arguments include a claim challenging the trial court's finding that his absence was voluntary, we will not overturn the judgment on the appellate record that we have here.[11]

Conclusion

---

[10]*Id*. art. 26.12.

[11]*Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984) (rejecting an argument that there was insufficient evidence to support the trial court's conclusion that the defendant's absence was voluntary when the record showed the defendant knew when and where he was to appear, the defendant failed to communicate with his attorney or the court on the morning of the trial, and the defendant offered no excuse following the trial for his failure to attend his trial).

When Hooks was in the trial court, the appellate record shows that his attorney never claimed that Hooks didn't enter a plea. On a silent record, we must assume that Hooks entered a plea before he was tried.[12] Consequently, the premise on which Hooks bases his entire appeal—that he was tried without first entering a plea—has no merit. Because the factual premise on which Hooks' issues rely lack merit, we overrule his issues that his constitutional and statutory rights were violated because he was tried without the benefit of a plea. Accordingly, the trial court's judgment is,

AFFIRMED.

HOLLIS HORTON
Justice

Submitted on November 21, 2023
Opinion Delivered January 31, 2024
Do Not Publish

Before Golemon, C.J., Horton and Wright, JJ.

---

[12]Tex. R. App. P. 44.2(c)(4).